JAMES W. FAXON *vs.* EUGENE FOLVEY.

In April 1861, A. conveyed land in Q. to B. by a deed absolute in form, but intended to secure B. against loss on a liability he had assumed for A. On August 11, 1862, A. gave B. his promissory note for $225, the amount B. had had to pay under this liability, and B. signed and delivered to A. the following writing: "Received of A. a deed for three lots of land, situate in Q., which is to be deeded back to him, his heirs and assigns, upon payment of a note of $225, dated August 11, 1862." *Held,* that this was a sufficient declaration of trust, within the Gen. Sts. *c.* 100, § 19.

A. conveyed land to B. by a deed absolute in form, and B. gave A. a written declaration that he held the land, after payment of a certain note, in trust for A. The note was paid, but before the land was reconveyed B. became bankrupt, and his assignee sold the land. Both the assignee and the purchaser learned of the trust from both A. and B. before the sale. *Held,* that no title passed to the purchaser on which he could maintain a writ of entry.

**A.** conveyed land to B., with an oral agreement that B. should hold it in trust for A., and B. afterwards signed a declaration of trust to that effect. *Held*, that the fact that the deed of the land was executed and delivered on Sunday did not entitle B. to hold the land discharged of the trust.

WRIT OF ENTRY, dated July 20, 1871, to recover land in Quincy. At the trial in the Superior Court, before *Pitman*, J., the following facts appeared :

C. S. French gave a warranty deed of the land, dated April 6, 1861, to Stephen Morse, Jr., purporting to be for a valuable consideration ; the deed was given to secure Morse against liability on a promissory note which he had indorsed at French's request. On August 11, 1862, French gave Morse his note for $225, which was the amount that Morse had been compelled to pay on his indorsement, and Morse gave him the following paper : " August 11, 1862. Received of C. S. French a deed for three lots of land, situate in Quincy, which is to be deeded back to him, his heirs and assigns, upon payment of a note of $225, dated August 11, 1862. Stephen Morse, Jr." The note was paid by French, but the land was never conveyed back to him, although about the time the note was paid Morse expressed his willingness to make the conveyance.

Morse subsequently became bankrupt, and in 1868 all his real estate was assigned to E. G. Pratt, his assignee. Morse told Pratt that the land belonged to French and he himself had no interest in it, but Pratt advertised it for sale. Before the sale the demandant called on Pratt and Pratt told him that Morse and French both claimed that Morse had no interest in the land, and that he himself knew nothing else about it. The auctioneer at the sale stated that he was about to sell the right and title, if any, that Morse had in the land ; and that the assignee did not claim that he had any at all, but that it was sold to get a title. At the sale French told the demandant that the land belonged entirely to him, that Morse had no claim to it except the legal title ; that the original deed was good for nothing ; and that Morse claimed no interest, and his assignee had no claim. The demandant replied, " Morse owes me, and I am going to get something out of it if I can," and he bought the land, and on June 8, 1871, Pratt gave

him a deed of the land. On June 15, 1871, French gave a deed of the land to the tenant.

The tenant contended that the deed of French to Morse was executed and delivered on Sunday. There was conflicting evidence as to this, and as to the demandant's knowledge of it; and by the consent of parties these questions were submitted to the jury, who found that the deed was executed and delivered on Sunday, but that the demandant took his deed without notice that that deed was so executed and delivered.

The judge reported the case, by consent of parties, to this court. If, upon the whole case, the demandant was entitled to judgment, it was to be entered accordingly; otherwise for the tenant, unless the court should be of opinion that any material issue of fact was presented, in which case it was to stand for trial under such instructions as the court might direct.

*W. Colburn*, for the demandant.

*J. Q. Adams*, for the tenant.

COLT, J. The land demanded was conveyed by French to Morse in 1861, to be held under a verbal agreement as security for the indorsement of a note. Although absolute in form, it was a conveyance in trust. French afterwards gave his note to Morse for the amount paid on account of this indorsement, and took a writing signed by him, dated August 11, 1862, stating that he had received of French a deed of land in Quincy which was to be reconveyed to him, his heirs and assigns, upon payment of the note then given.

These facts appear in the tenant's case, and are not attempted to be controlled by the demandant. They show that Morse held the land from the first as trustee under a trust which, within the requirements of the statute, Gen. Sts. c. 100, § 19, is fully proved by the writing relied on. The writing is something more than an agreement to sell the land. Its form is a receipt for a deed which had been before delivered with an agreement to convey back on payment of the sum named, and implies that it was intended as the declaration of a trust upon which the land was and had been held. It identifies and connects itself with the land, because no other deed between the parties was shown to which it

could refer. The object and nature of the trust are stated with sufficient certainty, and as a declaration of trust it is not necessary that it be made at the time of the delivery of the deed. *Arms* v. *Ashley,* 4 Pick. 71. *Burrell* v. *Joy,* 16 Mass. 221. Perry on Trusts, § 82. Browne on St. of Frauds, § 97.

The Bankrupt Act (U. S. St. 1867, *c.* 176) § 14, declares that no property held by the bankrupt in trust shall pass by the assignment. Assignees take only the estate which the bankrupt had a beneficial as well as legal interest in, and which is to be applied to the payment of his debts. The statute applies to all estates where the trust can be legally established, and is effectual against one claiming under the assignee who is not in the position of a purchaser without notice. This is decisive, for the facts reported are sufficient to charge the demandant as well as the assignee with notice of the trust. In general it is enough if such notice be given that the purchaser is put upon his inquiry. Information of a fact coming from a source which ought to be heeded is sufficient. Both were told here that Morse and French claimed that Morse had no interest in the land, to which the demandant answered that Morse owed him and he was going to get something out of it if he could. He took the chance. *George* v. *Kent,* 7 Allen, 16. *Hawley* v. *Cramer,* 4 Cowen, 717. The payment of the note reduced the title of Morse to a mere naked trust.

The legal title to the land is therefore still held by Morse in trust. The demandant must recover on the strength of his own title. He cannot disturb the tenant's possession without showing some right in himself to that possession, and the deed under which he claims gives him none.

The tenant, in addition to his other defences, contended that the original deed from French to Morse which was introduced as the foundation of the demandant's title was executed on the Lord's day and was therefore void. The jury have found that it was so executed and delivered, and have also found that the demandant took his deed without notice. This all becomes immaterial as a defence. The tenant's rights are sustained on other grounds. **The demandant however now insists that the trust cannot be**

established by showing the illegal agreement of the parties on the Lord's day, and that the absolute title therefore passed to Morse. But the answer is that the rule that no action based on a contract made on the Lord's day can be maintained to enforce its obligations in favor of either party cannot be so applied as to enlarge the interest which was conveyed to Morse by the transaction, or to defeat the equitable title of French. It was an agreement executed by the delivery of the deed. The apparent title conveyed was qualified by the trust imposed upon it as effectually as if the terms of the trust were contained in the deed itself. Neither party to the transaction or those claiming under them can be permitted to take advantage of the alleged illegal act. The title, such as it was, passed to the grantee, and was held, as we have found, in trust. The purpose of the trust declared was neither immoral, contrary to the statutes, or contrary to public policy; the only illegality charged is in the time when by the conveyance and agreement the trust was created. Under such circumstances the law does not interfere to undo what the parties have done by setting aside their deeds. Neither party can now assert rights inconsistent with the conveyances. *Myers* v. *Meinrath*, 101 Mass. 366. *Atwood* v. *Fisk*, Ib. 363. *Hall* v. *Corcoran*, 107 Mass. 251. *Judgment for the tenant.*