## Case No. 351.

### In re ANDERSON.

### Ex parte WELSH.

[2 Hughes, 378; 9 N. B. R. 360.][1]

District Court, E. D. Virginia. March 16, 1874, and April 18, 1876.

Circuit Court, E. D. Virginia. Nov. 30, 1874.

BANKRUPTCY—CREDITORS' BILL —WIFE'S PROPERTY—HUSBAND AS TRUSTEE—WIFE AS WITNESS— JURISDICTION OF STATE COURTS — LIMITATIONS.

1. A proceeding in bankruptcy is in the nature of a general creditor's bill in equity, which, when once commenced, gives the bankruptcy court exclusive jurisdiction to administer the bankrupt's whole estate, and, therefore, the filing, after such a proceeding is instituted, of a general creditor's bill against the bankrupt, in a state court, is in conflict with the bankruptcy act and can give no jurisdiction to the state court.

2. In the schedule of this bankrupt was included his interest in lands inherited by his wife from her father. It was a question whether this was simply a life interest by the curtesy, or a fee acquired, ratified by a court, in the course of a suit instituted in a state court after the petition in bankruptcy by a judgment creditor against the bankrupt, his assignee, and his other judgment creditors, in the form of a general creditor's bill. In the

[1][Reported by Hon. Robert W. Hughes, District Judge, and here reprinted by permission. 9 N. B. R. 360, contains partial report only.]

progress of this suit an agreement in writing in the form of a decree was signed by the attorney in fact of his judgment creditors, by the bankrupt himself, by his wife (who acted, however, under extreme moral duress and pressure), and was also intended to be signed by the assignee in bankruptcy, but was not so signed; by which writing the wife was to have only a fourth of his land and the creditors to get the rest. In this state of facts, held that this written agreement cannot bind the bankrupt's estate either favorably or adversely, because (1st), it was not signed by the assignee; (2d), because the signature of the bankrupt who was civiliter mortuus as to his estate was a nullity so far as the estate was concerned; and (3d), because a decree in a judicial proceeding coram non judice is a nullity binding nobody.

3. Held, also, that the fact of the bankrupt having received his discharge in bankruptcy made no difference in giving effect to the writing he had signed. as to the estate surrendered in bankruptcy.

4. Held, also, that the assignee had no power to give consent to an extrajudicial decree of the state court, the laws of congress nowhere giving him power to become defendant to a proceeding in a state court commenced in invidiam towards and essentially in conflict with the jurisdiction which the bankruptcy act of congress gives to the bankruptcy court.

[Cited in Augustine v. McFarland, Case No. 648.]

5. In proceedings in bankruptcy the wife of the bankrupt is a competent witness to facts affecting the estate of the bankrupt (Revised Statutes of the United States. paragraph 5088), and so is every party "to the trial or cause" (section 8, of 22d June, 1874, amending section 26 of the general bankrupt act.)

6. The limitation of two years imposed upon certain proceedings by or against an assignee in bankruptcy does not bar a petition by a married woman who for more than two years has been defrauded by her husband, who is a bankrupt, when the fraud came to her knowledge within two years before filing her petition in the bankruptcy proceeding, claiming her rights against the bankrupt's estate.

7. Where a married woman, who has been deprived of her rights, under the coercion of judicial proceedings which she is made to believe are about to ratify the wrong she has sustained, signs an agreement by which she endeavors to save a part of what is due her, a court of bankruptcy on principles of equity will exercise all the power it has in setting aside such agreement and reinstating her in her rights.

8. Where a husband has by fraud or mistake been invested with the title in fee simple of real estate inherited by his wife, equity will treat him as a trustee of his wife, and a court of bankruptcy will refuse to subject the land to liens of the creditors of the husband who is a bankrupt.

[Cited in Re Campbell, Case No. 2,348.]

In bankruptcy.

This cause came twice before the district court. On the first of the two occasions the facts were as follows, on which the decision of 16th March, 1874, affirmed 30th November, 1874, was based: Anderson filed his petition in this court on the 29th December, 1868; on the 26th January, 1869, he was adjudicated a bankrupt by the register. In his schedules he surrendered large real estate in Montgomery county, including his interest in a tract of 1200 acres of land on Mill creek, inherited by his wife, Sarah J. Anderson, from her father. The debts

shown by his schedules amounted to some $25,000 or more, of which $19,000 were judgment.liens. C. B. Gardner was appointed his assignee. Anderson received his discharge in bankruptcy on the 14th November, 1872. Some time in the latter part of 1869, a general creditor's bill was brought in the circuit court of the state for Montgomery county, by the executors of James R. Kent, holding a judgment lien for about $6750, against George W. Anderson, his assignee in bankruptcy, and his other judgment creditors, as defendants. There is no copy of the record of that suit in this court, but both Anderson and his · assignee answered the bill. That suit went on in the circuit court of Montgomery until the 20th December, 1872, when an agreement in writing was entered into by J. J. Wade, attorney in fact for the judgment creditors on one part, and by Anderson and his ·wife on the other part, but in which the assignee of the bankrupt did not join, by which it was stipulated, in substance, that the tract on Mill creek and probably some other of the real estate mentioned in the creditor's bill should be divided into four parts, one of which parts, or so much as might be necessary, should be sold in satisfaction of the judgment debt to Kent's estate and costs; another part should be settled on Mrs. Anderson; and the other two parts should be sold for payment of the remaining debts of the bankrupt according to their priorities. There was a privy acknowledgment of this writing by Mrs. Anderson before a notary, who was an attorney for the creditors. This writing seems to have been executed under circumstances of pressure brought to bear on Anderson and his wife. One of its stipulations was, that it should be put into the form of a decree by the circuit court of Montgomery; and that court did instanter, on the day the agreement was executed, render a decree carrying out its stipulations, appointing T. E. Sullivan and John Gardner its commissioners to make sale of the lands. This cause did not come formally before this court until the 29th July, 1873, when Anderson filed his petition here, one of the allegations in which was, that "when your petitioner was adjudicated a bankrupt, a suit was pending in the circuit court of Montgomery to subject your petitioner's lands," etc. In that petition Anderson prayed for the exemption to him of a $2000 homestead out of the lands which had been the subject of the written agreement of the 20th December, 1872. He also prayed for a restraining order against Sullivan and Gardner, commissioners, forbidding the sale of the real estate ordered to be sold by the decree of the local court. This court granted the restraining order thus asked for, and the motion now on the part of the commissioners is to dissolve that order. The petition having alleged that the chancery suit in the local court was pending when the pe-

titioner was adjudicated a bankrupt, this court was misinformed as to the material fact that that suit had been brought after the adjudication in bankruptcy. A further disguise of this fact was effected by the "abstract of proceedings" filed in this cause by the register, H. C. Gibbons, which is false in all its dates, and which post-dates the filing of the petition and all subsequent proceedings by twelve months. Whether that post-dating was a mistake or a device does not appear. The same petitioner filed another petition here on the 28th November, 1873, alleging, amongst other things, that "since filing his original petition" in bankruptcy, "and after this court had taken jurisdiction in the premises, the executors of . James R. Kent filed a creditors' bill in the circuit court for Montgomery county," etc.. etc., and praying that the parties in said suit, their attorneys and all other persons · may be restrained from proceeding further in said suit, and that all matters touching his estate as a bankrupt may be adjudicated and settled here in this court. His wife, Sarah J. Anderson, by her next friend, · has also come to this court, in a petition which is found in the papers, but the date of the filing of which is not noted, reciting the material facts bearing upon her title to the 1200 acre tract of land which has been mentioned; and praying, among other things, that her interests in the same may be protected. Thus is this court called upon to take action in. the premises, for the first time since its knowledge of the fact that the creditor's suit brought in the local court, as mentioned, was brought after the adjudication of Anderson as a bankrupt.

[This cause was afterwards heard on petition for review. See 23 Fed. 482.]

T. E. Sullivan and J. J. Wade for creditors.
C. A. Ronald, for bankrupt.
Robert Stiles, for bankrupt's wife.

HUGHES, District Judge. Upon the facts as they have been recited I have to say as follows:

The written agreement of 20th December, 1872, cannot bind the bankrupt's estate; first, because it was not signed by the assignee; and second, because the signature of George W. Anderson, who was civiliter mortuus, was a nullity so far as the estate was concerned.

There is nothing in the point made by the commissioners in their answer, that Anderson .signed the agreement after he received his discharge. By the very language of that paper, he was only "discharged of and from all debts provable against his estate which existed on the 31st of December, A. D. 1868." He was not discharged,. as a party, from this court; and was in no manner ·or degree reinvested by the discharge with control over the estate which he had surrendered in bankruptcy. As to that estate, his becoming a

party to the agreement in question was an absolute nullity.

As an agreement between the parties to it, this writing had no validity against the bankrupt's estate. Did it derive validity from the consent which the assignee gave to the decree rendered in accordance with and execution of the agreement? The decree could only derive validity, if at all, from the consent of the assignee. He did consent.[2] The only question is, Had he power to do so?

I think he had not such power, for several reasons. The assignee in bankruptcy is the creature of the laws of congress on that subject. He has no power but such as these laws give him. And nowhere do they give an assignee power to become defendant to a suit, in another court than the bankrupt court, commenced after the petition and adjudication. He may become party defendant to a suit elsewhere which has been commenced against the bankrupt before his petition, and which may be pending at the time of the petition; but not to such a suit commenced after the petition. In fact, the law does not contemplate the possibility of such a suit. Having given full jurisdiction over the bankrupt's estate to the bankruptcy court, and mindful of the mockery of doing so if another court could appropriate that jurisdiction after the adjudication, it does not contemplate the possibility of an assignee going into another court as a defendant in such a suit, and nowhere gives him authority to do so.

It gives the assignee power to go out into other courts, and sue as plaintiff in right of the estate; its language being "he may sue and recover the said estate, debts, and effects." It gives him power to prosecute as plaintiff suits thus commenced by himself after the adjudication, or suits which may have been commenced by the bankrupt, and may be pending at the time of the bankruptcy. But it confines his power to appear as defendant to suits which were pending at the date of the bankruptcy; its language being: "He may defend all suits at law or in equity pending at the time of the adjudication of bankruptcy, in which such a bankrupt is a party in his own name, in the same manner and with the like effect as they might have been defended by such bankrupt," but for the bankruptcy.

The suit in the circuit court for Montgomery having been commenced after the adjudication, the assignee had no power to become defendant in it; his doing so was of no validity to bind the estate, and any consent which he may have given to the

proceedings in that suit was null and void. It is useless, therefore, to consider the question whether the state court had jurisdiction of a general creditor's bill against this bankrupt after his adjudication. Being civiliter mortuus as to the estate, his being a party to that suit was a nullity; and his assignee having no power to be a party to the suit, his being made so was a nullity. The suit itself was therefore a suit ex parte as to this estate, and its proceedings can in no manner bind it. I will say, however, on this question of jurisdiction, that I know of no case, in any of the reports, of a general creditor's suit in chancery being brought in another court than the court of bankruptcy against the bankrupt after his adjudication. I assume such a proceeding to be wholly anomalous. The law contracts with the bankrupt that in consideration of his surrendering his whole estate (certain exemptions excepted) for the benefit of his creditors, he shall be discharged of all debts provable against him existing at the date of adjudication. It provides a court to execute this contract, and it gives that court full and exclusive control of his estate for that purpose. For the law to allow any of these creditors to go into another court after the bankrupt has made his surrender, for the purpose of asserting control over the estate, would be to break faith with the other creditors and the bankrupt himself, and convert the whole proceeding in the bankrupt court into a mockery and fraud. The pretension to such a jurisdiction does not bear serious examination, nor deserve it.

I will say passim that the restraining order of 29th July, 1873, cannot stand longer on that prayer of the petition which prays for a homestead. The homestead exemption is not allowable to Anderson, and the restraining order granted for its protection cannot stand longer on that ground. I will sign an order continuing the restraining order given by this court on the 29th July, 1873, but basing it on the grounds set forth in this decision.

On appeal from an order entered by the district court as indicated, the circuit court rendered the following supervisory decision:

BOND, Circuit Judge. I am of opinion that this petition to the supervisory jurisdiction of the circuit court, to set aside a decree of the district court continuing the restraining order of the 29th of July, 1873, ought to be dismissed. Whatever may be the rights of the petitioner, Mrs. Anderson, in the district court, I do not think it necessary to determine; but it is clear that both she and her husband were entitled to be heard therein, and that the proceedings in the state court, commenced after the adjudication in bankruptcy, were null and void so far as they affected the rights of any person who might come into the bankrupt court claiming an interest in the property

---

[2] At the first hearing of this cause it was believed and conceded that the assignee had given his consent; but in fact he did not. Not until 27th November, 1875, did he consent, which he did then by indorsing on a copy of the agreement of 20th December, 1873, his acceptance and adoption of it.

in litigation in the state court; and there .was necessity for the first restraining order, to prevent any disposition of the property till such claim was adjudicated; and upon the petition of Mrs. Anderson in the district court it was necessary to continue said order, which the district court has done, which action is the matter complained of. The court remands the case to the district court with directions to proceed to ascertain the rights of the parties claiming the property in litigation in the state court, without expressing any opinion as to the merits of the controversy.

On April 18th, 1876, this cause came on again before the district court, when, upon the facts and questions of law stated in writing, that court again rendered a decision in the cause as follows:

HUGHES, District Judge. In ascertaining the facts of this case I have relied chiefly upon that portion of the evidence to which no exception was taken by counsel on either side. But the objections which were made to the competency of Mrs. Anderson are not good. This is a "cause or trial" arising under the bankruptcy act; and it is expressly provided by that act, section 5088, that the wife of a bankrupt may be examined, and by the amendment of June 22d, 1874 (section 8 amending section 26), it is provided generally that any party to a trial or cause under the bankruptcy act shall be a competent witness. Premising this much, I proceed to state the leading facts of the case, which, so far as they seem to be material, are as follows: Sarah J. Anderson, the wife of the bankrupt, was an heir of Jacob Kent, who died intestate in 1858, leaving a large real and personal estate. There were several coheirs, most of whom had received greater or less portions of the estate during their father's lifetime. In the division and distribution of the estate it was found that the homestead farm was nearly equivalent to the interest of one of the heirs and distributees. It was desired by the family that some one of the heirs should purchase this farm. Mrs. Anderson was persuaded, and agreed to do so, and accordingly, on August 26th, 1858, the day on which the home farm and most of the personal property of the estate was advertised to be sold, it was announced in the presence of the company that the home farm would not be sold, and that Mrs. Anderson had consented to take it as her share of the estate. Robert Gibbony, administrator of Jacob Kent. was authorized by the heirs to settle among them their shares of the estate, and to make sale of the lands for division. His authority was in the form of a power of attorney, dated the 19th July, 1858, signed by the heirs, and the husbands of those who were femes covert. But this power of attorney had no validity in law to bind these femes covert, not hav-

ing been privily acknowledged by them. By a paper similarly signed, it was agreed by the several heirs that each might take parts of the estate of the intestate Jacob Kent at such appraisement as might be made by persons appointed by the county court of Montgomery county, which was the county in which the intestate died and his estate was. On the 7th of February, 1859, there was an arbitration and appraisement (made by three citizens chosen for the purpose) of the home farm, and the valuation of it was thereby fixed at $13,248, which, as was recited in the paper signed by the arbitrators, was "to be paid for by Mrs. Anderson's entire interest in the estate." In short, for several years, the purchase of the farm was treated by all concerned as made by Mrs. Anderson, the consideration paid for it being her interest in her father's estate.

At some time during Gibbony's agency in selling the lands of the estate, he sold to George W. Anderson, individually, a tract of 335 acres lying contiguous to the home farm for the price of $6 an acre. Gibbony went on to sell all the other of the numerous tracts of land belonging to the estate, none of which, except the home farm, as aforesaid, was retained by any of the heirs. In the year 1862 (August 20th), having made contracts for the sale of all the lands, and probably collected much of the purchase-money, Gibbony caused deeds to be prepared, executed, and acknowledged, conveying on the part of all the heirs the several parcels of land (except the home farm) to the several purchasers of them. Mrs. Anderson, on the faith of having purchased the home farm with her own interest, joined in these deeds granting fee simple titles for all the other several parcels of the lands of the estate to the respective purchasers of them.

Notwithstanding the clear understanding which had been had at the beginning, and had continued for several years, between all persons in interest, and especially between Gibbony and Mrs. Anderson, that she had taken the home farm for her interest in the estate, yet Gibbony, in procuring the execution of the deeds conveying the several portions of the realty belonging to the estate as just mentioned, caused the remaining heirs, in conveying their interests in the home farm, to make a deed for it to George W. Anderson instead of Mrs. Anderson, and to reserve in this deed a vendor's lien (now claimed in favor of Gibbony's widow and representative) for about $4000 due from George W. Anderson to the estate of Gibbony. On the 21st of August, 1862, the day after this deed of the remaining. heirs purports to have been executed, Gibbony, by a paper signed between himself and George W. Anderson, treated the home tract of 1200 acres and the tract of 335 acres purchased individually by Anderson as both sold to Anderson himself, and took Anderson's bond for the aggregate sum of the $13,248 which

had been awarded by arbitration as the price of the home farm, and $6 per acre for the 335 acre tract. Whether or not Anderson's connection with these proceedings of Gibbony was fraudulent or not in intention, does not appear. The objects of Gibbony seem to have been to secure the debt of about $4000 which he held against Anderson personally, upon the home tract as well as upon the other tract, and to make commissions as administrator upon the valuation price of the home farm ($13,248), as well as upon his actual sales. No considerable amount of money, if any, was ever paid by George W. Anderson on account of this $13,248; and Gibbony, as to most if not all of it, from time to time as he settled his fiduciary accounts before commissioners, merely handed to Anderson receipts purporting that he had received from Mrs. Anderson amounts approximately making up the price of the home farm. Afterwards, when the transaction of August 21st, 1862, came to be put in the form of G. W. Anderson's bond of that date, Gibbony credited these receipts nominally from Mrs Anderson upon the record. Of these proceedings between Gibbony and her husband Mrs. Anderson was all the while ignorant; and it would seem also that the deed from her co-heirs conveying the home tract to Anderson instead of his wife was never delivered to Anderson; that the execution of it to himself individually was unknown to him; and that it was deposited for registration in the clerk's office of the county without the knowledge either of Anderson or his wife. The existence of the deed to her husband remained unknown to Mrs. Anderson until some recent time, which is not shown in the evidence or the proceedings. For all that the proceedings show, she did not know of the fraud practiced upon her until December, 1872.

In December, 1868, George W. Anderson had filed his petition here as a bankrupt, and was so adjudicated. In his schedule, B 1, he gave in his interest in the 1200 acres of land which have been referred to, as a life estate, stating that this tract of land "was inherited by Sarah J. Anderson, wife of petitioner, from her father, Jacob Kent, and petitioner only has a life estate in the same depending on his own life."

Notwithstanding the pendency of the proceedings in bankruptcy, the representatives of the estate of James R. Kent, who had received in 1867 a judgment for a large amount against George W. Anderson, filed, in August, 1869, a general creditor's bill in the circuit court of Montgomery county against G. W. Anderson and his two assignees in bankruptcy, for the purpose of subjecting his lands (treating the farm of Mrs. Anderson as his own in fee simple) to their own judgment and those of several other creditors, and to the vendor's lien for about $4000 held by Gibbony's representatives, all the liens

amounting to about $19,000, the whole real property, including the homestead, being supposed to be worth upwards of $20,000.

The said court entertained the bill, and proceeded with the cause until it was ready for hearing. About the time the cause was ready for hearing Mrs. Anderson was made to believe that the deed of 1862 to her husband of the homestead farm had bereft her of her rights, and that she could not preserve her right to the whole home tract, and was persuaded to sign, which she did with great reluctance and distress, an agreement with the attorney of the creditors of her husband, by which it was stipulated that a decree should be entered for a division by survey of the home tract into four parts, giving the choice to herself of one of these parts to be held by her in separate right in fee simple; and for permitting the sale of the other parts for the benefit of her husband's creditors, and by which she agreed to such a division and distribution of the property. Her joining in this writing was acknowledged privily by her before one of the counsel of the creditors on the 20th December, 1872, under circumstances of haste and pressure; and a consent decree in accordance with an agreement was entered by the local court on the same day, directing the agreement to be carried into execution. The assignee of George W. Anderson (or rather the surviving assignee of two, one of whom is dead) did not sign the agreement of 20th December, 1873, at the time, but he has lately, to wit, on the 27th November, 1875, indorsed on a copy of it his acceptance and adoption of it.

After this decree was entered and the survey for division under it made, Mrs. Anderson joined her husband in a deed conveying the parts of the home tract not retained by her for the benefit of creditors, in pursuance of the agreement and decree just mentioned. This deed was acknowledged by her before the assignee of George W. Anderson in bankruptcy, a party in interest, but was never duly delivered; was recalled before delivery; and that part of the decree has never been executed by herself and her husband. So far as her own action goes, therefore, there is no further committal of herself to the alienation of her home tract than the agreement she signed with the attorney of the creditors, and the decree of the court made upon it; both on December 20th, 1872.

In an effort still to escape the action of the Montgomery court, George W. Anderson filed a petition in this court on the 29th July, 1873, praying an injunction against the plaintiff in the suit in that court, and his creditors, parties thereto, from all further proceedings therein, which was granted by the then judge of the court. The object of this petition was to have a homestead to the value of $2000 set apart to the bankrupt out of the real estate he had surrendered in bankruptcy. This claim being inadmissible, that petition has been dismissed and the order of in-

junction granted upon it would have been dissolved but for the fact that afterwards, probably in December, 1873, Mrs. Anderson came into this court, by petition setting out the leading facts which have been recited, and praying the court to set aside and annul the deed of her co-heirs to George W. Anderson, of 20th August, 1862, and to require these co-heirs to convey the home tract to George W. Anderson only for his life, and after his death to herself and her heirs.

The petition brought to the knowledge of this court, for the first time, the proceedings that had taken place in the circuit court of Montgomery county; the agreement which Mrs. Anderson had signed, under the coercion of those proceedings, with the attorney of her husband's creditors, and the decree of the said court based upon that agreement.

This court decided, upon that petition, that the proceedings against George W. Anderson, a bankrupt and civiliter mortuus as to his estate, was ex parte, and as to the estate in bankruptcy and the assignees of the estate, was coram non judice and null; the estate being in the custody and within the exclusive jurisdiction of this court, and the assignees having no power to make themselves parties to a proceeding in the nature of a creditors' bill against the bankrupt, his estate, and his assignees, commenced after the adjudication in bankruptcy. See Case of George W. Anderson, [opinion of Hughes, district judge, in the district court, ante, page 832.] Its decree to this effect was made on the 16th March, 1874, and was affirmed on appeal November 30th, 1874. That decree also enjoined all further proceedings in the circuit court of Montgomery by the assignees and by the parties plaintiff there, and no further steps have been taken in that court.

The case is in this court as a court of bankruptcy on the petition of Mrs. Anderson, by her next friend, which has been mentioned, on a plea of the statute of limitations interposed by the assignee to defendant's petition, and on the petition and answer of Isaiah A. Walsh, administrator, d. b. n. of James R. Kent, the creditor who filed the general creditors' bill in the circuit court of Montgomery county, which has also been mentioned. This last petition (filed here December 7th, 1875) prays for a specific execution of the agreement signed by Mrs. Anderson on the 20th December, 1872. As to the rest, it is an answer to Mrs. Anderson's petition.

This court has, in this proceeding, jurisdiction to settle the title to the homestead farm of the Kent estate, at least as between Mrs. Anderson and all the creditors of her husband, George W. Anderson, who are before the court, inasmuch as Mrs. Anderson has herself voluntarily invoked the powers of the court in that behalf. How far it will exercise this jurisdiction in the present condition of the pleadings, I will state in the sequel.

The plea of the statute of limitations interposed by the counsel for the assignee against the petition of Mrs. Anderson is not good.

The bankruptcy court, in the bankruptcy proceeding, has jurisdiction under the first section of the bankruptcy law, for the ascertainment and liquidation of all liens and other specific claims upon the estate of the bankrupt, and for the adjustment of the various priorities and conflicting interests of all parties. Its jurisdiction is conclusive. Rev. St., § 711. This duty to settle conflicting interests between various parties is not affected by any provision of law limiting suits and proceedings within two years in cases where a mere adverse interest of the assignee in bankruptcy is concerned. Even if it were, however, Mrs. Anderson's petition was brought before the expiration of two years after she came to knowledge of the fraud. I now proceed to state my conclusions as to the rights of Mrs. Anderson in the home farm of her father, which is the principal matter to be dealt with in this proceeding.

The pivotal fact is that certain property belonging to a married woman, and in which the husband had no beneficial interest, was, without any fault on the part of the woman and without her knowledge, wrongfully, improperly, and mistakenly conveyed directly to the husband. Based upon this state of facts, the first proposition is, that as between husband and wife the husband took no beneficial title at all, and in equity the case stands upon the same footing as though there had been done which should have been done, and in pursuance of the well-known canon of equity jurisprudence, the court would regard that as having been done which ought to have been done. I therefore hold that Anderson took not for himself, but only as trustee for his wife, by the deed of 20th August, 1862, made by the co-heirs of his wife to him.

The second proposition is that the case stands upon exactly the same footing as between the wife thus situated and every other person not within the strict definition of a bona fide purchaser from the husband, without notice of the equitable title in the wife. None but a bona fide, actual purchaser, without notice, can take against the wife.

The third proposition is, that in order to constitute a bona fide purchaser within the above rule, the purchase-money must have been actually paid before notice, (2 White & T. Lead. Cas. Eq., White & T. 3d Amer. Ed., pp. 62, 91, 101); and must have been actually paid in money or negotiable instruments and not in bonds or other securities not negotiable, (Id. pp. 62, 117). The object of this latter part of the rule is manifest; for if the payment were made otherwise, the purchaser would be able to protect himself by pleading a failure of consideration.

It is not sufficient that a conveyance of the

legal title is made as security for an antecedent debt. Id. pp. 103, 108. Neither judgment creditors nor assignees for creditors are bona fide purchasers within this rule. Id. pp. 105–108, 110.

The fourth proposition is, and it is a corollary from the preceding one, that no property held by the bankrupt in trust shall pass by the register's assignment in bankruptcy to the assignee. This is expressly stated by section 5053 of the Revised Statutes. Vide, also, Fisher v. Henderson, [Case No. 4,820;] Faxon v. Folvey, 110 Mass. 392. The authorities which might be cited and books referred to in support of these various propositions are exceedingly numerous and entirely decisive.

The fifth proposition is, that an assignment in bankruptcy will not pass a trust estate, for the court will not presume that the trustee intended to commit a breach of trust. Perry, Trusts, § 336; Webster v. Cooper, 14 How. [55 U. S.] 488; Hill, Trustees, marg. pp. 269, 530; Lounsbury v. Purdy, 18 N. Y. 520; Copeman v. Gallant, 1 P. Wms. 314; Finch v. Earl of Winchelsea, Id. 278; Bennet v. Davis, 2 P. Wms. 318; Scott v. Surman, Willes, 402; Carpenter v. Marnell, 3 Bos. & P. 40; Winch v. Keeley, 1 Term R. 619; Dangerfield v. Thomas, 9 Adol. & E. 292; Kip v. Bank of New York, 10 Johns. 63; Blin v. Pierce, 20 Vt. 25; Ontario Bank v. Mumford, 2 Barb. Ch. 596; Hynson v. Burton, 5 Pike, 496; Price v. Ralston, 2 Dall. [2 U. S.] 60; Kennedy v. Strong, 10 Johns. 289; Clarke v. Minot, 4 Metc. [Mass.] 346. I will now state my conclusions on the foregoing facts and law.

The title of George W. Anderson in the home farm was in trust for his wife. That title being held in trust did not pass to Anderson's assignee in bankruptcy, but remained in him for the benefit of his wife, none but a life interest in the property attaching to himself. None but this life estate can be subject to the judgment liens against Anderson. The agreement of Mrs. Anderson, signed and acknowledged the 20th December, 1872, was made so unwillingly and under such moral duress that a court of equity ought to set it aside; the more as the acknowledgment of it was made before a notary who was of counsel for her adversaries and thereby morally disqualified from taking it. As the proceedings in the circuit court of Montgomery county were coram non judice, the decree of that court carrying the agreement into execution was a nullity; nothing but the agreement itself can be considered in the case.

I have had no difficulty in arriving at the facts of the case or at the law and the rights of parties arising from those facts.

But I have some difficulty in deciding what to do with the agreement signed 20th December, 1872, by Mrs. Anderson, in the present condition of the pleadings here. But one of the creditors who through their attorney were parties to that agreement is before the court, viz., J. A. Welsh, administrator, d. b. n., of James R. Kent. It is competent for me to dismiss his petition; but it is not competent for me at this time to adjudicate upon that agreement in a manner to bind the other creditors of George W. Anderson who were through their attorney parties to the agreement but are not before the court. I have no doubt of the jurisdiction of the court to make all these creditors parties defendant to the petition brought voluntarily here by Mrs. Anderson for the purpose of setting aside that agreement; for it is competent for the court under the first section of the bankruptcy act "to adjust the conflicting interest of all parties" asserting claims upon the estate of the bankrupt, and if all the creditors who were parties to the agreement of 20th December, 1872, were before the court by personal notice and summons as defendants to Mrs. Anderson's petition, I should not hesitate to pass upon that agreement, and, upon the present proofs in the case, to set it aside.

The most I could do now would be to dismiss the petition of J. A. Welsh, administrator, etc., and declare that George W. Anderson brought into this court as assets no other estate in the home farm in question than an estate for life, and leaving open the question how far Mrs. Anderson's joining in the agreement of 20th December, 1872, affected her title in the home farm, until all parties in interest shall be before the court.