Tretola *v.* Tretola.

CATHRYN S. TRETOLA *vs.* CAROLYN TRETOLA.

No. 03-P-223.

Norfolk. March 12, 2004. - July 19, 2004.

Present: CYPHER, DREBEN, & TRAINOR, JJ.

*Trust,* Amendment and modification. *Frauds, Statute of.*

This court concluded that, under the circumstances of the case, the settlor of a
trust sufficiently indicated in a second amendment to that trust and in a
designation of contingent beneficiaries executed the same day that three
parcels of land previously conveyed to the trust were to be held in trust,
and that the Statute of Frauds did not require that delivery of the deed or
conveyance of the parcels be made subsequent to the second amendment,
which served as a new or revived declaration of trust. [523-525]

CIVIL ACTION commenced in the Norfolk Division of the
Probate and Family Court Department on September 20, 1999.

The case was heard by *Robert W. Langlois,* J., on a statement
of agreed facts, and a motion for reconsideration was considered
by him.

*Thomas V. Urmy, Jr. (Michelle H. Blauner* with him) for the
plaintiff.

*Edward D. McDonald* for the defendant.

DREBEN, J. The question to be determined in this appeal is
whether the devolution of three parcels of real estate in Quincy
is governed by the terms of a trust established by Joseph S. Tre-
tola or by the provisions of his will. If the trust is valid, the
beneficial interests in the properties are owned fifty per cent by
the decedent's daughter, Cathryn S. Tretola, and fifty per cent
by the decedent's widow, Carolyn M. Tretola. If the trust is
invalid, Carolyn inherits the entire property under the remainder
clause of Joseph's will.

Cathryn brought this action claiming, among other things,
that Carolyn is in breach of her fiduciary duties and owes Cath-

ryn rent. Carolyn counterclaimed, stating she was the sole owner of the property under Joseph's will. A judge of the Probate Court, on a case submitted on the basis of an agreed statement of facts, held that Joseph owned the real estate individually by operation of law under the doctrine of merger, that Joseph never identified or reconveyed the property to a trust, and that the provisions of the will control. He denied Cathryn's motion for reconsideration. This is an appeal by Cathryn from the ensuing judgment.[1] We vacate the judgment because the documents, taken as a whole, manifest Joseph's clear intention that the properties are held in trust.

1. *Facts.* We take the relevant facts from the "Stipulation of Agreed Facts" and the exhibits attached thereto. Since the case was submitted for decision on these materials, we "draw our own inferences and decide the case according to our judgment as to the questions of law." *Commonwealth* v. *Maritime Underwater Surveys, Inc.*, 403 Mass. 501, 504 (1988). See *Bourgeois* v. *Hurley*, 8 Mass. App. Ct. 213, 214 (1979).[2]

The three parcels on which Joseph operated a rooming house business were originally owned by Joseph and his first wife, Marlene, and then by the corporation through which Joseph operated his business. On March 15, 1971, Joseph established a trust, setting forth that certain real estate in Quincy was to be conveyed to Joseph as trustee. Article 1 provided that the trust "shall be designated and known as the Brookside House Trust" (the trust). Joseph was sole trustee, and Marlene and Joseph were the beneficiaries. On March 26, 1971, the corporation (Brookside House Inc.) conveyed the three parcels to the trust. The trust instrument was recorded in the Norfolk County Registry of Deeds on March 30, 1971, and the deed was recorded one day later.

---

[1]Cathryn's brief states that the parties agreed to reserve the question of an accounting and other matters until after the Probate Court judge addressed the core issue of the existence of the trust.

[2]On a motion for reconsideration, Cathryn asked the judge, inter alia, to make findings as to the grantor's intent at the time of the second and third amendments to the trust. The judge considered that he was "constrained to deal only with those agreed upon facts and exhibits," and "should not" consider making additional findings. The cases cited in the text indicate that a judge is free to make inferences if there is no restriction precluding such inference in the agreed statement of facts.

Marlene and Joseph were divorced in 1976. On March 10, 1976, Marlene assigned all her rights in the trust to Joseph.[3] On the same day, Joseph, as trustee, executed an amendment to the trust (the First Amendment) providing that the beneficiaries "shall be Joseph S. Tretola and such other person or persons as he from time to time may nominate and appoint as herein provided." The amendment was assented to by Marlene and Joseph as beneficiaries[4] and recorded. A notation of the book and page was placed on the margin of the recorded original declaration of trust.

Referring to the original declaration of trust, the book and page of its recording, and to his authority as trustee to amend the trust with the consent of the beneficiaries, see note 4, *supra*, Joseph, as trustee, executed another amendment to the trust on May 28, 1982 (the Second Amendment). To show whose consent was needed, Joseph, as trustee, executed a "Schedule of Beneficial Interest of Brookside House Trust," certifying "that the following is the schedule of beneficial interest in said Trust as of May 28, 1982:

"Joseph S. Tretola
441 Grove Street
Braintree, MA 02184
One Hundred (100%)"

On a separate paper, Joseph, the only beneficiary at the time, see *Bongaards* v. *Millen*, 440 Mass. 10, 14 (2003), assented to the amendment, signing as "primary beneficiary." The Second Amendment was recorded and a notation to this effect was placed on the margin of the recorded copy of the original trust.

Article 6(b) of the Second Amendment authorized the beneficiaries to appoint contingent beneficiaries who were to take their interest upon the deaths of the beneficiaries. On a page entitled "Brookside House Trust Designation of Contingent Beneficiary," Joseph, individually, designated Carolyn as

---

[3]In exchange for her assignment, Marlene received $100,000, part of which was in the form of a promissory note secured by a mortgage on one of the three parcels. The note was paid, and on July 18, 1984, the mortgage was discharged. Both the mortgage and the discharge were recorded.

[4]Article 19(b) of the trust authorized the trustee to amend the trust with the consent of the beneficiaries.

contingent beneficiary if she survived him by sixty days, and if not, he named two other alternate beneficiaries.[5,6]

On September 28, 1988, Joseph made another designation, also entitled "Brookside House Trust Designation of Contingent Beneficiary," in which he stated "one-half (1/2) to Carolyn M. Tretola of Braintree, Massachusetts, and one-half (1/2) to Cathryn S. [Tretola] of Norwell, Massachusetts."

Joseph executed a "Third Amendment Brookside House Trust" on October 13, 1988, in which he named Carolyn and Cathryn as successor trustees if he ceased to serve or was unable to serve as trustee. This document was duly recorded and the recording noted on the margin of the recorded original trust document.[7]

After Joseph's death in April, 1999, Carolyn and Cathryn, on August 25, 1999, acknowledged their acceptance of appointment as trustees of the trust and also executed a fourth amendment to the trust in which they provided for successor trustees. Both of these documents were recorded.[8]

---

[5]Joseph executed a will on May 14, 1982, which named as remainder beneficiaries the same persons named in the May, 1982 designation of contingent beneficiaries of the trust.

[6]Paragraph 25 of the Stipulation of Agreed Facts states that the exhibit showing the designation "is a conformed copy of a document dated May 28, 1982, entitled 'Brookside House Trust Designation of Contingent Beneficiary' which was obtained from the files of Attorney David M. Shaw, who represented Joseph S. Tretola in May of 1982 and at other times." The stipulation also states that Attorney Shaw testified at his deposition that he prepared the exhibit at Joseph's request, that Joseph signed it, and that Shaw delivered the original to Joseph in 1991 with other original trust documents. The parties were unable to locate a copy of the exhibit which bears Joseph's original signature. The judge stated in both his original memorandum and his memorandum on reconsideration that the parties agree that the settlor executed the document, noting, however, that the exhibit was unsigned.

There is an obvious error as to date and exhibit number in paragraph 25 of the stipulation, which also caused an insignificant error in note 1 of the judge's memorandum of decision on the motion for reconsideration.

[7]On the same day that he amended the trust, Joseph executed a new will in which he left a life estate in his residence to Carolyn, the remainder to Cathryn. He left the remainder of his property to Carolyn if she survived him by sixty days. The will did not mention the property conveyed to the trust.

[8]In view of our disposition, we need not discuss the documents executed by Carolyn and Cathryn after Joseph's death. The parties were clearly unaware of the doctrine of merger at the time.

2. *Decision of the Probate Court judge.* In his original memorandum of decision, the judge, citing *Langley* v. *Conlan*, 212 Mass. 135, 138 (1912), ruled that a merger of the equitable and legal title in the trust occurred on March 10, 1976, when Marlene assigned her beneficial interest in the trust to Joseph and Joseph executed the First Amendment naming himself as sole beneficiary and sole trustee. At that time, in the judge's view, the trust failed and the property was returned to Joseph. In order to reestablish the trust, Joseph would have been required by the Statute of Frauds to reconvey the real estate to the trust. Since he did not do so, he was the owner of the property at the time of his death on April 22, 1999.

In her motion for reconsideration, Cathryn challenged the conclusion that the Statute of Frauds required a reconveyance into the trust, but she did not seek reconsideration of the determination of merger. In denying her motion, the judge ruled that merger had occurred, and the subsequent documents executed by Joseph did not establish a new trust or revive the earlier one. Relying on the "Schedule of Beneficial Interest of Brookside House," in which the settlor was listed as sole trustee and sole beneficiary,[9] the judge considered that the Second Amendment failed to separate legal and equitable title. The judge also ruled that the 1988 designation of contingent beneficiaries was

> "insufficient to re-establish the aforementioned Trust. . . . The Designation contains no manifestation of intent to create a trust on the part of the Settlor; the document fails to identify the trust res, the duration of the trust, the powers of the trustee and the trustee's duties in relation to the trust. . . . Nor does the Designation refer, by book and page, to the original Declaration of Trust . . . or the original conveyance of property into the Trust . . . . Accordingly, the Designation fails to re-establish the Trust and, more importantly, fails to identify and/or reconvey property into the Trust."

[9]As indicated earlier, we consider that the schedule was prepared to show that the amendment was properly consented to by the then sole beneficiary. The schedule was not intended to counter the contingent beneficiary designation.

Reasoning as follows, he also held the Third Amendment insufficient to identify the trust property. Although it referred to the original trust (executed prior to conveyance) and to the Second Amendment ("which failed to identify any trust res and failed to separate legal and equitable title"), the references were inadequate. Since the amendment neither identified the trust res nor made clear reference to the original conveyance, and since there was no conveyance of the property subsequent to the execution of the Third Amendment, that amendment did not establish a trust or reestablish the already terminated trust.

Subsequent to the denial of the motion for reconsideration, the parties filed a joint motion for the entry of judgment. A judgment (which referred to both the reasons set forth in the original memorandum of decision and the memorandum entered on the plaintiff's motion for reconsideration) entered dismissing Cathryn's complaint and finding for Carolyn on her counterclaim.

3. *Discussion.* In view of Cathryn's limiting the issues on her motion for reconsideration, the question of merger may not properly be before us.[10] In any event we need not reach the issue because we consider that Joseph sufficiently indicated in the Second Amendment and the May, 1982 designation of contingent beneficiaries that the three parcels previously conveyed to the 1971 trust were to be held in trust.

---

[10]We note, however, that merger is an equitable doctrine, and both recent and early commentators indicate that the doctrine will not be applied "if serious injustice would result or if the settlor's intent obviously would be frustrated." Bogert, Trusts and Trustees § 129, at 398 (rev. 2d ed. 1984). See Beach, Trusts and Trustees § 423, at 978 (1897) (a court of equity will always prevent a merger to preserve any beneficial interest of the parties, to promote the purposes of justice or to carry into effect the intention of the donor). See also *Hunt* v. *Hunt,* 14 Pick. 374, 384 (1834); *In re Phipps's Will,* 2 N.Y.2d 105, 108-109 (1956) (if the intent of a settlor is that a trust continue or that a successor trustee be appointed, courts will prevent the termination of the trust).

We also note that 2 Scott & Fratcher, Trusts § 112, at 157, & § 122, at 222-223 (4th ed. 1987), suggests, and Restatement (Third) of Trusts § 46(2) & comment f (2003), states, that although a trust will not arise where a person declares himself trustee for such persons as the declarant may select, the dispositions can be perfected by the later selection of those who are to benefit. See generally Palmer, Private Trusts for Indefinite Beneficiaries, 71 Mich. L. Rev. 359 (1972).

If the original trust terminated by operation of law, it is obvious that Joseph was unaware of that fact. Although he believed that he was amending his original trust rather than creating a new one, he manifested an intention to hold the assets in trust. There was here no lack of beneficiaries rendering the trust void. The designation of contingent beneficiaries to take after his death was authorized by the trust instrument and was signed by Joseph, who was the settlor, sole trustee, and at the time, only beneficiary of the trust. See *Bongaards* v. *Millen*, 440 Mass. at 14. (The later designation of contingent beneficiaries in 1988, of course, superseded the 1982 designation.)

The terms of the trust were set forth in nineteen articles and no claim is made that they were inadequate. The trust property was clearly identified. The conveyance of the three parcels in 1971 were to "Joseph S. Tretola as he is Trustee of Brookside House Trust under a Declaration of Trust dated March 15, 1971," referring to the book and page, and place of recording. The original recorded trust document contained references in the margin to the subsequent amendments to the trust. The record title thus "identifies and connects itself," *Faxon* v. *Folvey*, 110 Mass. 392, 394 (1872), with the second and subsequent amendments to the Brookside House Trust as well as with the original declaration of trust. See *id.* at 394-395. The parcels involved in the Brookside House Trust are readily recognized. See *Herman* v. *Edington*, 331 Mass 310, 314-315 (1954).

The Statute of Frauds does not require that delivery of the deed or conveyance of the property be made subsequent to the declaration of trust (or here, subsequent to the Second Amendment, which we treat as a new or revived declaration of trust). In *Faxon* v. *Folvey, supra,* the written declaration of trust occurred after delivery of the deed, the court stating at 395: "The object and nature of the trust are stated with sufficient certainty, and as a declaration of trust it is not necessary that it be made at the time of the delivery of the deed." See *Hinckley* v. *Hinckley,* 79 Me. 320, 325 (1887), to the same effect.

In sum, we consider the three parcels were held in trust at the time of Joseph's death, and the beneficiaries are those designated by him in 1988. Accordingly, the judgment is vacated and the case is remanded to the Probate Court for further

proceedings consistent with this opinion. See note 1, *supra.* Cathryn's request for appellate attorney's fees is denied.

*So ordered.*