SAMUEL B. HINCKLEY *vs.* DANIEL HINCKLEY and another.

Penobscot. Opinion March 23, 1887.

*Witness. R. S., c. 82, § 98. Equity. Trust. Conveyance.*

The plaintiff in a suit in equity cannot be a witness where the defendants are "made parties as heirs of a deceased party."

It would be a fraud in equity to convert into an absolute sale that which was intended for a different purpose.

A son conveyed to his mother all the estate which he inherited from his father and received from her an agreement to reconvey when he paid her an indebtedness of a specified amount. She thereafter kept a strict and detailed account of the property and its income and regularly paid her son the net income. She repeatedly spoke of it in her letters to him as his property. She willed it to another to hold in trust for her son. There was no account of any indebtedness of the son to his mother and no evidence of any save the paper she gave him when she received from him the conveyance. *Held*, that the mother held the property in trust for the son and that the trust terminated at her death.

ON report.

Bill in equity.

*John Varney, F. H. Appleton and Hugh R. Chaplin,* for the plaintiff, cited: *Gerrish* v. *Towne,* 3 Gray, 82; *Stearns* v. *Hall,* 9 Cush. 31; *Blood* v. *Hardy,* 15 Maine, 61; *McClellan* v. *McClellan,* 65 Maine, 500; 1 Perry, Trusts, §§ 86, 81, 82; Brown, Stat. of Frauds, §§ 97, 111; Lewin, Trusts, 201; *Rogan* v. *Walker,* 1 Wis. 527; *Faxon* v. *Folvey,* 110 Mass. 392; *Haskell* v. *Hervey,* 74 Maine, 196; Jones, Mortgages, § 248; *Kerr* v. *Gilmore,* 6 Watts, 405; *Murphy* v. *Calley,* 1 Allen, 107; *Campbell* v. *Dearborn,* 109 Mass. 140; Jones, Mortgages, § 265; Kent's Com. *144 note d (12 ed); *Henry* v. *Davis,* 7 Johns. Ch. 40; *Stinchfield* v. *Milliken,* 71 Maine,

567; *Corvell* v. *Hall*, 22 Mich. 377; *Truck* v. *Lindsey*, 18 Iowa, 504; *Peugh* v. *Davis*, 96 U. S. 332.

*Wilson and Woodard*, for the defendants.

Up to the time of the production of the papers by Mr. McCrillis, defendant's counsel had regarded the transaction between the mother and son as similar to the transactions in the case *Hunnewell* v. *Lane*, 11 Met. 163, where a daughter had been persuaded by her father to place in his hands some thousands of dollars worth of property to protect it against her inability to take care of it, and upon the death of the father, and his estate being represented insolvent, a bill was brought by the daughter for a conveyance, and it was decreed.

The letters of Mrs. Hinckley to Samuel, are largely relied upon to maintain the bill. We submit that there is nothing in them inconsistent with our view of trust for the security of property for the son, and an equitable mortgage for the security of the debt due from the son to the mother.

It is not denied that in case of an instrument absolute upon its face, with no instrument of defeasance back, parol testimony might be admissible to prove, that it was really intended as security for a debt, but, when, as in the case at bar, there is an instrument of defeasance, free from any imputation of fraud, accident or mistake, unambiguous in its terms, parol evidence cannot be admitted to vary, add to or contradict the written instrument.

This doctrine is fully discussed in *Campbell* v. *Dearborn*, 109 Mass. 140. Likewise in *Elder* v. *Elder*, 10 Maine, 80, also *Glass* v. *Hulburt*, 102 Mass. 24; *Chadwick* v. *Perkins*, 3 Maine, 399.

The case *Woolen* v. *Hearn*, reported in White and Tudor's Leading Cases in Equity, vol. 2, part. 1, p. 920, lays down the doctrine, which seems to be founded on good reason that "though a defendant, resisting a specific performance, may go into parol evidence to show that by fraud the written agreement does not express the real terms, a plaintiff cannot do so, for the purpose of obtaining a specific performance with a variation."

The testimony of Samuel B. Hinckley is not admissible under the first of the statutes of this state relating to evidence in cases in which an executor or administrator is a party.  R. S., c. 82, § 98, sub. § 11 ; *Hall* v. *Otis,* 77 Maine, 122 ; Dwarris on Statutes, p. 199.

The control of the question of the costs of these proceedings is wholly with the court.  We cite 2 Perry on Trusts, § 892, 899, 928 ; 1 Perry on Trusts, § 245 ; *Stilson* v. *Leeman,* 75 Maine, 412.

HASKELL, J.    Bill to regain an estate, partly real and partly personal, of the approximate value of $100,000, conveyed by the orator to his mother in her lifetime to be held by her, either as a personal trust for his benefit, or in equitable mortgage to secure advances made to the orator, or for his benefit, and interest upon the same.

The answer admits, that on January 8, 1868, the orator conveyed the real estate to his mother and received from her a writing, promising to reconvey the same upon payment of all sums of money then due to her from the orator within one year, and that on June 3d of the same year, he conveyed to her the personal estate, but avers, that he then received a writing from her in place of, and as a substitute for, the writing of January 8, whereby she promised to reconvey both the real and personal estate to the orator upon condition only, that he should pay her $12,817.56, with interest, one half in two months, and the other half in six months, when the writing should become void, and that the orator has not paid any part of the sum mentioned, but has forfeited all right to reclaim his estate, and that his mother in her lifetime acquired the absolute title to the same, and by a codicil to her will, that has been proved and allowed in the probate court, devised the same to the respondent, Daniel, in trust nevertheless for the orator during his life, and at his death to descend to his children if any, if not then to be divided among her heirs, and that the respondent, Daniel, at the death of the mother took the estate, and has since held the same pursuant to the trust created by the mother's will as he has a legal right to do.

It appears that the orator had been improvident, and had incurred debts, and was inclined to be wasteful of property that he had recently inherited from his father, and had expensive, if not dissolute habits, and that his mother, desirous to preserve the property for him and to prevent its waste, induced him to convey the same to her upon the terms mentioned in the writings between them; that she took possession of the property and managed and controlled it until her death, July 10, 1883, meantime paying to the orator the net income as it accrued, of which she kept a strict and detailed account; that she left no account showing the indebtedness of $12,817.56, or any writing explaining the same or its origin, or any credit or writing showing that any part of the same had been paid.

The cause comes up on report, with a stipulation that objection to the competency of witnesses, or to the admissibility of evidence, may be made at the trial.

Objection is well taken to the competency of the orator as a witness, inasmuch as the respondents are "made parties as heirs of a deceased party," and his testimony must be laid out of the case. R. S., c. 82, § 98. *Simmons* v. *Moulton*, 27 Maine, 496; *Burleigh* v. *White*, 64 Maine, 23; *Wentworth* v. *Wentworth*, 71 Maine, 72; *Higgins* v. *Butler*, 78 Maine, 520.

The respective legal rights of the mother and of the orator flow from the written instruments between them; but extraneous evidence is admissible to prove every material fact known to the parties when the writings were executed. *Conway* v. *Alexander*, 7 Cranch, 218; *Morris* v. *Nixon*, 1 How. 118; *Russell* v. *Southard*, 12 How. 139.

The deed and memorandum of June 3d, do indicate an absolute sale; but the question recurs, whether the "terms were not adopted to veil a transaction" widely differing from the appearance that it assumed? It would be fraud in equity to convert into an absolute sale that which was intended for a different purpose. *Whittick* v. *Kane*, 1 Paige, 202; *Taylor* v. *Luther*, 2 Sumner, 228; *Flagg* v. *Mann*, 2 Sumner, 486; *Jenkins* v. *Eldredge*, 3 Story, 181; *Wyman* v. *Babcock*, 2 Curtis, 386; s. c. 19 How. 289; *Campbell* v. *Dearborn*, 109 Mass. 130; and to

determine this, the court must look through the cloak that con-ceals the real truth, and consider from the light thrown upon the transaction by all the circumstances surrounding it what the real purpose and intent of the parties must have been. *Peugh* v. *Davis, 96 U. S. 332.*

In this case, a mother saw her son improvident, wasteful of his substance, and it may be, of dissolute habits; she knew that he had incurred debts, and was likely to incur other liabilities and indulge in expenditures that not only threatened his personal welfare, but as well the consuming of a large estate, recently inherited from his father, her husband. She first took from him a conveyance of all his real estate, and gave in return a writing that she would reconvey the same upon payment within one year of all the sums he owed her and interest. Six months later she received all his personal property, and gave in return a writing to reconvey both the real and personal estate upon payment to her within six months of nearly thirteen thousand dollars with interest. The security exceeded the supposed debt nearly or quite eight fold. She must have known that he had no means to pay so large a debt, save from the property she had received. How the debt arose, the evidence does not show. She left nothing to show it. What then can be the true interpretation of the contract between the mother and son, unless it be, that she acquired his property to preserve it, and incidentally to secure her from loss for advances made for his benefit?

The bill is framed in a double aspect; either that the mother was an equitable mortgagee, or held the estate as a trust, voluntarily created by the orator for his own benefit; and it may be of little practical consequence in which capacity she held the estate. That the transaction of June 3, might well be held to create an equitable mortgage, if the debt named in it was real, there can be little doubt; but the evidence, touching the mother's treatment of the property for the sixteen years that she held it prior to her death, and her written declarations to the orator concerning it, may as well be held to prove, that she did not claim to hold the property simply in mortgage, but rather that she held the property by what she considered "a sacred trust for her son."

An express trust concerning lands can only be created, or declared, by some writing signed by the party or his attorney. R. S., 1857; 1883, c. 73, § 11; and the writing need not be made at the time of the principal transaction; it may be made subsequently; and it is sufficient, though it be informal, if the terms of the trust can be understood from it. *McClellan* v. *McClellan*, 65 Maine, 500 and cases cited. *Faxon* v. *Folvey*, 110 Mass. 392.

So soon as the mother acquired the property, she began a detailed account of its income; and as long as she lived, caused a strict account of income and expenditure to be kept touching it, and promptly paid to the orator the net income as it accrued, without deducting a farthing in payment of any supposed debt of her own, or of interest upon it, or for her own services in the management of the property. Her letters to the orator show how tenderly her affections followed him in sickness and in health, and how solicitous she was, that the income from his property should be as large as possible. In one letter she says, "You seem to feel, and have no confidence in me, when I have written you repeatedly, that I considered your property in my hands, as sacred as my own heart's blood. I have done the very best for you that I could. I have wished many, many times, that you had never put your property into my hands, for it has caused me so much care and trouble, but it has been much better, for you have received your income regular, without any trouble or expense." . . . I shall do right by you. You say you have nothing to show in case I am taken away. You have my letters; besides, there is plenty of evidence among my papers that your property is all right." Again she writes, "You may rest assured, I shall always send you all of your interest, except enough to pay your taxes. . . . I think yours is invested as well as it can be these times." Again she writes, "Your income is a little more this year. I send you $200 this month, and shall continue to send you the same amount every month as long as your property yields it."

These letters plainly enough declare, that she held the orator's property in trust for his benefit, and her own conduct conformed

to the declarations of her pen. She writes the orator, "I shall always send you all of your interest except enough to pay your taxes." · And at her death she left a will, providing that all of the orator's estate should be held in trust, the income to be paid to him during life, and the principal to be distributed among his heirs at his death.

The memoranda of January 8, and of June 3, are evidence of the relation of debtor and creditor; and that of June 3, is the only evidence in the case of the amount of the mother's supposed debt. It is not signed by the orator, nor is it made the basis of his claim by any averment in his bill. The respondents set it up in their answer as containing a condition,·for the breach of which, the orator has forfeited all right to regain the property conveyed to his mother, and the orator replies that the debt named in it is wholly fictitious, and stoutly contends that the circumstances under which it was given, and the conduct of the mother for sixteen years while she held, managed and paid over to him the income of his property, without ever suggesting that it was burdened with a debt of nearly $13,000, or making any charge or entry of the same in her book of account with him, outweigh all evidence of the debt from the writing itself.

The accounts of the mother show that she has been repaid all sums that she had charged to the orator, and that at her death she held a cash balance of income from his estate of $2,242.50.

The court is constrained to believe, that the $12,817.56 mentioned in the writing of June 3d is not due from the orator, but that it is a fictitious sum written for the appearance of a debt when no debt existed. She charged the orator for payments of money made for him during the year prior to June 3, 1868, and on the 31st of July, 1868, charged him with $2,172, paid upon her note given June 2d, the day before the date of the writing of June 3d, in payment of sundry executions against him, but made no charge of the $12,817.56 mentioned in that writing. It is improbable that she could have kept so detailed and strict an account with the orator and not have charged him with all that he owed her. Moreover, if she had advanced so large a sum, as it possible that for sixteen years she would not have men-

tioned it to some of her relatives, or friends, or counsellors, or have referred to it in some of her numerous letters to the orator? On the contrary, her letters clearly show that she considered all the property that she had received from the orator as his, and so treated it as long as she lived. Her conduct and her letters repudiate any claim for the $12,817.56 now sought to be charged upon the orator's estate, and must be held to overcome the writing of June 3d in that particular.

The trust assumed by the mother was personal, and terminated with her own life. *Hunnewell* v. *Lane*, 11 Met. 163 ; she could not delegate it, or by devise continue it. It follows, therefore, that the respondent Daniel, the executor of the trustee, should account for the personal estate that his testatrix held belonging to the orator, and should pay over the same to him. The respondents, heirs of the testatrix, should release their interest to the orator in the real estate that he conveyed to her by deed of January 8, 1868, and neither party should recover costs. In case of disagreement about performing the final decree, either party may apply for relief by written application in this cause.

*Decree accordingly.*

PETERS, C. J., WALTON, DANFORTH, EMERY and FOSTER, JJ., concurred.