### JACKSON et al. v. HUGHES.
### No. 7684.

Court of Civil Appeals of Texas. Austin.

July 1, 1932.

Rehearing Denied July 13, 1932.

688

Scarbrough, Ely & King, of Abilene, for appellants.

Collins, Jackson & Snodgrass, of San Angelo, for appellee.

McCLENDON, C. J.

Suit by Evelyn Jackson, and Mrs. Laura G. Roberts, as guardian of Una Pearl Jackson, a minor, against D. E. Hughes, to recover the proceeds of a policy of insurance, issued upon the life of Mrs. Bertha Jackson. From a judgment in favor of defendant upon a directed verdict, the plaintiffs have appealed.

The controlling facts follow:

The policy was written in 1923, the insured being at the time a widow having three children, Evelyn, Una Pearl, and Jack G. Jackson. The policy provided: "The beneficiary of this policy is Duwain E. Hughes, Trustee, for the use and benefit of Evelyn Jackson, daughter; Jack G. Jackson, son; and Una Pearl Jackson, daughter. In the event of the death of Duwain E. Hughes, Trustee, the beneficiary shall be Mrs. Pearl Jackson Sanders, Trustee, for the use and benefit of Evelyn Jackson, Jack G. Jackson and Una Pearl Jackson. Payment to the said Duwain E. Hughes, Trustee, or to Mrs. Pearl Jackson Sanders, Trustee, of the said sum insured of $6,000.00, shall discharge all obligation and liabilities from the Company hereunder."

Mrs. Jackson died in October, 1928, and appellee, her brother-in-law (husband of her sister), collected $5,244 on the policy, of which sum he has expended $1,480 upon the education of Evelyn Jackson. Mrs. Roberts was appointed guardian of the estate and person of the three Jackson children, and instituted this suit. John G. Jackson later died, intestate, and his two sisters are his sole heirs at law. Evelyn Jackson has become of age, and in the suit Mrs. Roberts, as guardian of the estate of Una Pearl Jackson, is claiming one-half of the proceeds of the policy, and Evelyn

Jackson the other half, less what has been expended upon her education by appellee.

The circumstances under which the policy was written are set forth in the following quotation from the testimony of the insurance agent who took Mrs. Jackson's application, and who appears to be a wholly disinterested witness:

"About a week or ten days prior to the issuance of the above mentioned policy Mr. Duwain E. Hughes of Mertzon, Texas, told me if I would go to Abilene and get Mrs. Rue Bertha Jackson to take a life insurance policy on her life for $6000.00 that he would pay the premiums. He stated the reasons for it were that in case of Mrs. Jackson's death the responsibility for looking after and educating the children would fall largely upon him, and said he was willing to pay the premiums on this policy if Mrs. Jackson would take it and if the conditions were entirely agreeable to her. He asked me to tell Mrs. Jackson that he would be willing to pay the premiums on this policy if it were to be made payable to him as Trustee for her children, to be used in any manner he might see fit for the welfare of the children, and that he was not to be under any bond or instructions from any one, but was to use his judgment in the expenditure of the $6000.00 in case of her death. * * * A day or two subsequently I went to Abilene, conferred with Mrs. Jackson, stated to her the suggestion made by Mr. Hughes that if she would agree to a policy being issued on her life, the beneficiary to be himself, Duwain E. Hughes, and the proceeds of the policy to be used as he might see fit for the education and welfare of the children, that he would pay the premiums on the policy. She agreed in full to the suggestion and was examined for the life insurance policy that day.

"The policy was later issued and delivered by me to Mr. Hughes, who paid me the first annual premium. After the policy was issued there was no conference, discussion or agreement between myself and Mr. Hughes or Mrs. Jackson."

Appellee's testimony was to the same effect with reference to his dealings and conversations with the agent. He stated, however, that he was acting in the matter for his wife, and her sister Mrs. Sanders, who through him paid all the premiums. He further testified to a number of conversations with Mrs. Jackson both before and after the policy was issued, showing the arrangement to have been as testified to by the agent. There was no evidence which directly or indirectly tended to discredit that of the insurance agent and appellee.

There were a number of objections to this testimony, the substance of which may be reduced to the following:

(1) The quoted provision of the policy in clear and unequivocal terms made appellee a naked trustee for the use of the three Jackson children, and all prior or contemporaneous parol declarations of the insured were merged therein, and evidence thereof was incompetent to vary the legal effect of the provision.

(2) The evidence was inadmissible under various provisions of the policy to the effect that it embodied the entire contract between the parties, and the beneficiary could not be changed without the consent of the insured.

(3) Appellee, whose testimony was the only evidence of any declaration of Mrs. Jackson subsequently to the issuance of the policy, was disqualified under R. S. art. 3716.

(4) In any event, such testimony would not support a directed verdict in view of appellee's interest in the litigation.

■ The general rule contended for by appellants, that, where parties have reduced their entire contracts to writing, all prior and contemporaneous negotiations and agreements are merged therein, and the writing cannot be varied or enlarged by parol evidence, is elementary.

■ The rule, however, does not apply, as to enlargement, where the entire agreement is not committed to writing, provided, always, the enlargement is not at variance with the writing.

■ A contract may be partly in writing and partly in parol. This, also, is elementary, and is recognized in one of the cases relied upon by appellants. Bryant Co. v. School District, 118 Tex. 255, 14 S.W.(2d) 53.

There is nothing upon the face of the quoted provision expressive of the thought that it embodies the entire terms of the trust agreement and the duties of the trustee; nor does the language employed, either expressly or by implication, exclude the thought that the parties have embodied the details of the trusteeship and the powers and duties of the trustee in an additional or supplemental agreement either verbal or written.

■ Appellants' point, in this regard, seems to be that, since the law attaches to the language employed, the interpretation that it creates a dry trust, parol evidence affixing active duties to the trustee, would be a variance, and not merely a not inconsistent enlargement, in that it would convert the trust which the instrument unaided creates as a dry one into an active one. The vice in this proposition lies in the fact that the law construes the language employed in the quoted provision, when unaided by extrinsic proof, as a dry trust merely because of silence on the subject of the trusteeship beyond the fact of its creation. The law cannot create an active trust or confer powers upon trustees, where the parties have omitted to do so, and necessarily, therefore, in that event the law must resort to the only alternative—declare the trust, but construe it as dry. The distinction is between a mere omission and exclusion either express or necessarily implied.

■ We think it manifest that an instrument which creates a trust without conferring any powers or imposing any duties upon the trustee, not only is not so complete on its face as to exclude the idea of an active trust, but carries the implication or suggestion of its own incompleteness. Especially is this true when, as here, there could be no useful purpose served by the creation of a mere dry trust.

Every case upon this subject to which we have been cited or which our research has disclosed supports this view. And this, even where the trust related to realty in jurisdictions where such trusts cannot be created by parol. Adams v. Canutt, 66 Wash. 422, 119 P. 865; Reid v. Reid, 12 Rich. Eq. (S. C.) 213; Hinckley v. Hinckley, 79 Me. 320, 9 A. 897; Nesbitt v. Stevens, 161 Ind. 519, 69 N. E. 256; Catland v. Hoyt, 78 Me. 355, 5 A. 775; Crown Co. v. Cohn, 88 Or. 642, 172 P. 804; Kendrick v. Ray, 173 Mass. 305, 53 N. E. 823, 73 Am. St. Rep. 289.

The last case cited is as to its facts on all fours with the case at bar, except that the name of the beneficiary, as well as the terms of the trust, was omitted from the policy, which read, "to and for the sole and separate use and benefit of E. A. Taft, trustee." The court say: "The intention on the part of the plaintiff's testator to create a trust of some sort was thus clearly manifested. But neither the terms of the trust nor the name of the beneficiary was disclosed in the policy. For the purpose of showing who was the beneficiary, and what the terms of the trust were, evidence of the declarations, oral and written, of the donor, were admissible."

Cases from Massachusetts and Maine are cited.

■■ The provisions of the policy to the effect that it embodied the entire contract of the parties and that the beneficiary could not be changed except with the consent of the insured had reference only to the relations between the insurer and the insured. The policy does not purport to define the relations between the insured and the beneficiary. A trust may be shown by parol in the beneficiary, although the policy may be entirely silent upon the subject and the insurer in entire ignorance thereof. This principle has been extended to cases in which the cestui que trust was not of a class who might be beneficiaries under the policy. Kerr v. Crane, 212 Mass. 224, 98 N. E. 783, 40 L. R. A. (N. S.) 692; Lashley v. Lashley, 212 Ala. 255, 102 So. 229; Crews v. Crews, 113 Ky. 152, 67 S. W. 276; Johnston v. Scott, 76 Misc. 641, 137 N. Y. S. 243.

■ Appellee was not disqualified to testify under R. S. art. 3716. No party to the suit was claiming the proceeds of the policy as an heir of Mrs. Jackson; nor were such proceeds any part of her estate. Grand Lodge, etc., v. Dillard Tex. Civ. App.) 162 S. W. 1173.

■ The testimony of the insurance agent which we hold to be competent and admissible clearly and unequivocally establishes· an active trust. Not only is this testimony, of an apparently disinterested witness, not contradicted, but there is no fact or circumstance in the record which throws any doubt or suspicion upon it. On the other hand, it affords a reasonable explanation (the only explanation in evidence) for the creation of a trust which otherwise would be of no useful purpose. Independently, therefore, of appellee's testimony, the purpose of the trust as an active one was not an issuable fact.

The only remaining question involves a construction of the trust agreement or declaration as regards the, powers of the trustee.

■ Appellants contend that each beneficiary shared equally in the trust estate. Appellee contends, and the trial court held, that the trustee was authorized to apportion the fund among the named beneficiaries, in whatever amounts his judgment and discretion might dictate, even to the exclusion of one or more of the beneficiaries from participation in the fund.

■ We sustain appellants' contention in this regard. The general presumption is that beneficiaries in a grant share equally. Gilmer v. Beauchamp, 40 Tex. Civ. App. 125, 87 S. W. 907; Yarbrough v. Whitman, 50 Tex. Civ. App. 391, 110 S. W. 471. This is especially true where all the grantees are of the same class. Judge Roberts, in Hancock v. Butler, 21 Tex. 804, said: "The general sense of American mind, as exhibited in ·deeds, wills, and in Statutes of descent and distribution, is that it is proper to give property to children, grandchildren, etc., they taking per stirpes."

The natural presumption is that the mother has equal solicitude for her ·children. There is nothing in the record which even intimates that this was not the case here. The language given by the evidence to convey her expressed intention in this regard was: "The proceeds of the policy to be used as he (appellee) might see fit for the education and welfare of the children." There is nothing in this language we think to warrant the construction that the trustee is invested with discretion to discriminate among the children; and, in the absence of some definitely expressed purpose to that effect, we hold that the discretion of the trustee is limited to the manner in which the fund shall be expended and does not extend to a choice of or discrimination among the named beneficiaries.

The trustee is entitled to hold one-third of the sum he collected ($1,748) to be expended by him in accordance with the terms of the trust for the benefit of Una Pearl Jackson. Mrs: Roberts, as guardian of the latter's estate, is entitled to one-half of that amount ($874), inherited by her ward from John G. Jackson. Evelyn is entitled to the unexpended balance of her one-third ($1,748—$1,480=$268) plus one-half of one-third ($874) inherited from her brother. The record shows that some interest has been collected from the fund, but we are unable to apportion it from the facts before us. For that reason we cannot render final judgment here.

The trial .court's judgment is reversed, and the cause is remanded to that court, with instructions to ascertain the amount of interest collected by appellee and its proper distribution among the above three funds, and thereupon to render judgment in accordance with such ascertainment and this opinion.

Reversed and remanded, with instructions.