**C. E. BIRK, Appellant,**

v.

**FIRST WICHITA NATIONAL BANK OF WICHITA FALLS, Trustee et al.,**
**Appellees.**

No. 16266.

Court of Civil Appeals of Texas.

Fort Worth.

Nov. 17, 1961.

Rehearing Denied Jan. 12, 1962.

Arch Dawson, Wichita Falls, for appellant.

Rogers, Eggers, Sherrill & Pace, and Guy Rogers, Wichita Falls, for appellees.

BOYD, Justice.

In 1936 C. Birk died testate, devising the bulk of his estate to his wife and his four children share and share alike, appointing the First National Bank of Wichita Falls (now The First Wichita National Bank) executor, granting the bank five years in which to carry out the provisions of his will, and, with the consent of a majority of the beneficiaries, an additional period not to exceed three years, and directing the bank to make semi-annual distributions of available funds to the beneficiaries. The term was so extended.

Mrs. Birk and the four children, on November 15, 1943, executed a written operative trust agreement and allowed the properties devised by C. Birk to remain in the hands of the bank and Ralph A. Birk, one of the sons, as trustees, for a period of five years with a provision for extensions. The bank was to handle and manage the properties without the joinder of Ralph A. Birk except in certain instances. On August 15, 1950, the trust instrument was amended so as to make applicable the provisions of the Texas Trust Act. By extensions of the term of the trust agreement it was in force at the time of Mrs. Birk's death.

On January 17, 1958, the four children, each "acting severally as to his interest", executed a written instrument extending the term of the trust for a period of fifteen years, with a provision for further extensions until a majority of the original beneficiaries should request a termination of the trust and a final distribution of the assets; the trust was to continue with the same accounting procedures, powers and duties as theretofore followed or set out in instruments executed by the signers, and "distribution of all cash, less reasonable reserves, to be made semi-annually to the undersigned beneficiaries, or their estates, in equal shares".

This instrument of January 17, 1958, also contained the following paragraph: "And we severally GRANT, SELL, CONVEY and DELIVER unto such Trustees, to continue in Trust, all of our mother's interest in such Trust, Including all portions of such interest which we may later acquire under her Will or as her heirs at law, same to form a part of the C. Birk Trust Estate and be handled and distributed agreeable with this and all other instruments relating to the C. Birk Estate."

Mrs. Birk died testate on January 29, 1958, devising " * * * all of the real estate I own, or have any interest of any kind in, except my home where I now reside * * * " to C. E. Birk. The realty in the trust estate consisted principally of 2,820.435 acres of land, which had been devised by C. Birk to his wife and his four children share and share alike. A clause in Mrs. Birk's will devised the residue, after certain other bequests, to the four children share and share alike.

Until the time of this law suit, the bank continued to make semi-annual distributions of available funds, except that it held in suspense the accruals since her death from what had been Mrs. Birk's one-fifth interest, which at the time this suit was filed amounted to $18,000.00.

C. E. Birk sued the trustees and the other three children to recover the $18,-000.00 which had accrued to such one-fifth interest; prayed that the ownership of the Mrs. Birk interest in the trust estate be established as against all adverse claims; and that the trustees respect his distributive rights thereunder. C. E. Birk claimed such one-fifth interest under his mother's will.

The trustees and the other defendants denied that Mrs. Birk owned any real estate at the time of her death and contended that her interest in the trust estate was personalty and vested in all four children equally under the residuary clause of her will; at least, they claimed that the distributable funds constituted personalty; but if it be realty, and, by the other terms of

said will passed to C. E. Birk, it was conveyed by him through the instrument of January 17, 1958, to the trustees, and became a part of the "C Birk Trust Estate", and is subject to be distributed as other accruals and properties, that is, equally to the four children.

Trial was to the court and resulted in a judgment for the defendants, and C. E. Birk has appealed.

Appellant contended in the trial court, and here contends by thorough brief and oral argument, that Mrs. Birk's interest in the trust properties was an interest in land, and passed to him by the specific devise of the will; and that the instrument of January 17, 1958, was ineffectual to alienate his title, and that the estate would be " * * * handled and distributed agreeable with this and all other instruments relating to the C. Birk Estate", by the distributions being made, not in equal portions, but according to the ownership and interests of the children.

█ It is a close point, but we have concluded that the judgment should be affirmed. Without determining whether Mrs. Birk's interest in the trust lands was realty or personalty, and therefore whether it was devised to appellant specifically or passed to the four children under the residuary clause, it is our opinion that by the instrument of January 17, 1958, appellant conveyed whatever interest came to him from his mother's one-fifth interest to the C. Birk Trust Estate, and agreed that the distributions should be made equally to the four children.

█ When the instrument of January 17 was executed, none of the children knew the contents of their mother's will or whether she had made or would make a will. None could know whether he would be loser or gainer by executing the instrument of January 17. Each had a hope, which in law is an expectancy. An expectancy may be conveyed. Humble Oil & Refining Co. v. Luckel, Tex.Civ.App., 171 S.W.2d 902, error refused w.o.m. The January 17 instrument granted, sold, conveyed and delivered to the trustees the Mrs. Birk one-fifth of the trust property. This seems to have been a complete alienation. Hammett v. Farrar, Tex.Com.App., 29 S.W.2d 949; 1 Scott on Trusts, p. 164, Sec. 17. And a deed will be construed to confer upon the grantee the greatest estate which the terms of the instrument will permit. Waters v. Ellis, 158 Tex. 342, 312 S.W.2d 231. If there is any doubt as to the meaning of the language of a deed it will be resolved against the grantor. 19 Tex.Jur.2nd, p. 398, Sec. 110. There need be no consideration to support a conveyance in trust. Restatement of the Law of Trusts, Sec. 29. It is immaterial in what order clauses appear in a deed. Harris v. Strawbridge, Tex.Civ.App., 330 S.W.2d 911; 19 Tex. Jur.2nd, p. 408, Sec. 116. It will be presumed that there was meant to be equality in the conveyance. John Hancock Mut. Life Ins. Co. v. Bennett, 133 Tex. 450, 128 S.W.2d 791. Such presumption has been applied in the interpretation of trust instruments. Jackson v. Hughes, Tex.Civ.App., 52 S.W.2d 687; Loring v. Palmer, 118 U. S. 321, 6 S.Ct. 1073, 30 L.Ed. 211; Shaull v. United States, 82 U.S.App.D.C. 174, 161 F.2d 891.

We think it is neither unreasonable nor unusual for children to agree to share equally in their parent's estate, even where some know or believe they would receive more than an equal share in a testamentary disposition. We think a child's granting, selling, and conveying to trustees whatever he may acquire from his parent through a will or by the laws of descent, and providing that such interest shall become a part of an existing trust estate derived from the other parent, and shall be distributed agreeably with all instruments relating to such estate, where all such instruments provide for distributions share and share alike, and made along with other children's identical grants, is a conveyance to the trustees effectual to equalize the expectancies and may be enforced as such.

The judgment is affirmed.